UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN KING,

                Plaintiff,

CASE NO. 04-74867

PAUL D. BORMAN
UNITED STATES DISTRICT COURT

-vs-

COLUMBIA TOWNSHIP POLICE
OFFICER KEVIN AMBS,
in his individual capacity,

                Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.     **BACKGROUND**

       This case arises out of the arrest of Plaintiff Sean King ("Plaintiff") for allegedly

obstructing a police officer in the performance of his duty, disorderly person/public drunkenness.

(Def.'s Mem. 1).

       In the early morning hours of December 15, 2002, Defendant, Police Officer Kevin Ambs

("Defendant Ambs" or "Officer Ambs"), came upon an unlocked car improperly parked in a

rural residential area. (*Id.*). Officer Ambs stopped and shined a light in the car and observed

what he recognized as marijuana on the dashboard of the car. (*Id.*). Plaintiff's deposition

testimony was that he had arrived in that car (King Dep. 27). Officer Ambs ran the license plate

number through the police database, which reported that the car belonged to a Ronald Richards

at an address in Brooklyn, Michigan. (*Id.*). Officer Ambs then called for a wrecker to arrive to

1

impound the vehicle, and Officer Ambs conducted a complete inventory search. (Pl.'s Resp. 1). While Defendant was inspecting the vehicle, an inebriated Plaintiff King and his friend, Lucas Anderson ("Anderson") came out of a house, approached the vehicle and asked Officer Ambs why he had searched the car. (*Id.*). Officer Ambs responded that the vehicle was illegally parked and that he was going to impound it. (*Id.*). Officer Ambs testified that when he was conversing with Plaintiff and Mr. Anderson, he smelled alcohol and threatened to arrest the two men for public intoxication, under a state ordinance that he admitted in his deposition had been repealed in 1974. (*Id.* at 2).

Plaintiff admitted in his sworn responses to Defendant's Interrogatories that he had consumed between nine and twelve 12 oz. cans of beer during the 24-hour period prior to the incident in question. (Def.'s Mot. Ex. D, Plaintiff's Answer to Interrogatories, March 31, 2005, pg. 3, question #8). Plaintiff was under the legal drinking age as he was only 20 years old at the time in question. Plaintiff and Anderson indicated to Officer Ambs that they did not own the car, of which the officer was aware, because he had already run the license plate numbers on the car. (Pl.'s Resp. 2). Officer Ambs testified that Plaintiff told him that he could not legally impound the vehicle. (Def.'s Mem. 2). After informing Plaintiff that an illegal substance had been found in the vehicle, Plaintiff told Officer Ambs several more times that he had no right to search the vehicle.[1] (*Id.*). Officer Ambs asked whether Plaintiff knew who owned the vehicle and Plaintiff testified that he lied and said, "No." (*Id.*). Plaintiff testified at his deposition that he told Officer

---

[1] Page 31, We, Lucas and myself persisted to Mr. Ambs saying that he could not, you know, search and impound this vehicle.
Page 33, Ques.-How many times would you estimate you advised the officer that in your opinion, he had no right to search the vehicle?
Page 34, Ans.-I would say two to three. (King Dep. May 9, 2005).

Ambs that the owner of the car was in the house. (King Deposition, pg. 34).

Officer Ambs asked if the car's owner was in the house from which they came (10737 Wesch Road), and Plaintiff replied in the affirmative. (*Id.*). Officer Ambs told Plaintiff that if he and his friend were not the car's owner, they should return to the house. (*Id.*). Plaintiff began to laugh and refused to leave. (*Id.*). Plaintiff testified that he and Anderson laughed at Defendant Ambs because they did not think that they had done anything wrong. (Pl.'s Resp. 2).

Defendant Ambs stated that he told them if they did not leave, he would arrest them for hindering his investigation. (Def.'s Mem. 2). Defendant asked if Plaintiff had been drinking and Plaintiff admitted that he had, but lied and told Defendant that he was 21 years old. (*Id.*). Officer Ambs did not order him to produce identification. Defendant Ambs then asked Plaintiff if the owner of the house from where they came was home, and Plaintiff replied, "No," but indicated that a person who lived at the house - Nick Klein ("Klein") - was there. (*Id.*). Plaintiff contends that Defendant Ambs advised him and Anderson that he was going up to the Klein house because he believed that the owner of the vehicle was in the home. (Pl.'s Resp. 2). Plaintiff and Anderson then returned to the Klein home with Defendant Ambs following behind them. (*Id.*).

The parties dispute what happened next. The vestibule of the Klein home had an inside screened porch leading to the front door. Defendant Ambs states that he came up to the vestibule and tried to open the vestibule door, but Anderson grabbed onto the handle from the inside to prevent the door from being opened. Defendant testified that he did not believe that forcing entry into the vestibule amounted to entry into the home. (Pl.'s Resp. 2). Defendant states that a short tug back-and-forth occurred between himself and Anderson, he got the door opened and

entered the vestibule. (Def.'s Mem. 2-3). Plaintiff contends that when Anderson resisted Defendant's attempts to open the vestibule door, Defendant Ambs told him that he would go to jail if he kept resisting. (Pl.'s Resp. 2). Defendant Ambs later admitted in his deposition that he did not believe that Anderson's resistance to opening the door was actually an arrestable defense. (*Id*; Pl.'s Mem. Ex. B at 24).

Defendant Ambs states that he then knocked on the front door, at which time Nick Klein opened the door. Plaintiff and Anderson stepped inside the house, while Defendant Ambs remained in the vestibule. (Def.'s Mem. 3). Klein identified himself as a resident of the home. (*Id.*). Defendant Ambs states that he asked Klein to step outside into the vestibule. (*Id.*).

At this point, as Officer Ambs attempted to speak with Klein, Plaintiff and Anderson, time and again, advised Klein that he did not have to speak to Defendant. (*Id.*). Plaintiff testified that he told Klein this twice. (Def.'s Mem. 3). Officer Ambs testified that Plaintiff spoke over him each time that Defendant tried to talk to Klein, interfering with his attempt to investigate the criminal activity related to the car containing drugs. (*Id.*). Plaintiff states that, at this point, Officer Ambs told Plaintiff "One more word and I will arrest you." (*Id.*).

As Officer Ambs again tried, for the third time, to speak with Klein, Plaintiff interjected a third time, "You don't have to talk to the officer." (*Id.*). According to Plaintiff, Officer Ambs then reached inside the open front door and tried to grab Plaintiff's arm, saying, "You're under arrest," which Officer Ambs repeated two or three more times. (*Id.*). As Defendant attempted to arrest Plaintiff, Plaintiff broke free from his grasp and retreated into the Klein home. (Pl.'s Resp. 3). Defendant followed Plaintiff into the home, cornering him in the kitchen, and grabbed him while Plaintiff continued to resist. (Def.'s Mem. 3). Defendant then pepper-sprayed Plaintiff

4

once, at which point Plaintiff ceased to resist.  (*Id.*). Plaintiff testified at his deposition that he was "still continuing to resist" when Defendant pepper sprayed him. (King Deposition, pg. 55).

Plaintiff was handcuffed and searched, at which time Defendant found a glass smoking pipe in Plaintiff's pocket. (*Id.*).  Plaintiff was arrested and asserted the Fifth Amendment privilege against self-incrimination in response to being asked why he had the pipe.  (*Id.*). Plaintiff acknowledged that this pipe could be used to smoke marijuana. (King Dep. 60).[2] Plaintiff testified that he had driven to Klein's house in Richard's car, which Ambs testified, had the marijuana in plain view. The opinion of the Michigan District Judge Honorable Lysle Hall (Plaintiff's brief in opposition, Ex. D) stated:

> Page 1: The officer noted that both suspects were intoxicated...

> Page 2: When the Defendant was searched pursuant to the arrest, a pipe containing a marijuana residue was found.

Plaintiff's counsel invoked the Fifth Amendment to prevent him from responding to a deposition question whether he had smoked marijuana on the way to Nicholas Klein's house.[3]

---

[2]Page 59, Ques.-And did he find anything in your clothing when he searched you?
Page 60, Ans.-Yes.
Ques.-What did he find?
Ans.-A glass pipe.
Ques.-[W]hat is a glass pipe?
Ans.-It is a smoking device.
Ques.-What is the purpose of such a pipe?
Ans.-Smoking.
Ques.-Do you know whether it's typically used to smoke marijuana or not?
Page 61, Ans.-Yes, it can be used to smoke marijuana.

[3]King Deposition, page 20, Ques.-Before you arrived at Nicholas' house, had you smoked any marijuana?
Mr. Kent: I'm going to object to any question regarding his purchase or consumption of alcohol, or the possession or use of drugs or paraphernalia only because he has a Fifth Amendment right not to answer those questions and he was under twenty-one at the time of the incident.

The Supreme Court held in *Baxter v. Palmigiano,* 96 S.Ct. 1551 (1976) that the prevailing rule is "that the Fifth Amendment does not forbid adverse references against parties to civil activity when they refuse to testify in response to probative evidence against them." That certainly appears to be warranted here, given the discovery of marijuana in plain view in the car Plaintiff rode to the house in, and the smoking pipe in his pocket.

After Plaintiff's arrest, officers arrived on the scene and Plaintiff was taken to jail.  (*Id.*). He was given a breathalyser test and obtained a reading of 0.14.  The Michigan standard for intoxication is alcohol content .08, so Plaintiff clearly met that standard. Plaintiff was released from jail later that day. Plaintiff was charged with violating three Columbia Township ordinances, including being drunk in public, resisting/obstructing an arrest, and possession of marijuana.  (Def.'s Mem. 3-4).  The state district court judge dismissed all three counts.  (Pl.'s Resp. 4).  First, the count of public drunkenness was dismissed because the ordinance did not conform with state law.  (Def.'s Mem. 4). Second, the court found that Defendant had no probable cause to arrest Plaintiff for obstructing or resisting arrest because he did not engage in any physical interference of Officer Ambs.  (Pl.'s Resp. 4).  Finally, the possession of marijuana charge was dismissed when the evidence was suppressed based on the court's ruling on the first two charges.  (Def.'s Mem. 4).

Plaintiff filed the instant action on December 14, 2004.  Defendant filed its Motion for Summary Judgment on January 3, 2006.  Plaintiff filed its response on February 14, 2006, and Defendant filed its reply on February 28, 2006.  The Court held a hearing on the motion on March 15, 2006.

## III.    <u>STANDARD OF REVIEW</u>

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof."  Fed. R. Civ. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).  In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact." *Id.* (citations omitted). *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990).

## IV.    DISCUSSION

Defendant Officer Ambs alleges that he is immune from suit under the doctrine of qualified immunity. In analyzing whether a police officer is entitled to qualified immunity, the Court must first consider "whether the facts alleged show the officer's conduct violated a constitutional right." *Lyons v. City of Xenia*, 417 F.3d 565, 571 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If the plaintiff can establish that a constitutional violation occurred, a court should [then] ask 'whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id.*

### A.    Fourth Amendment Violation

8

Plaintiff argues that his speech was constitutionally protected; that his advising Klein of his rights could not have provided Defendant with probable cause to arrest him.  Plaintiff states that clearly established law did not provide probable cause for arrest for obstruction under the Columbia Township ordinance.  Defendant contends that regardless of whether he actually had probable cause to arrest Plaintiff, he believed in good faith that Plaintiff had obstructed his ability to conduct an investigation.

The Fourth Amendment requires that an officer have probable cause in order to effect an arrest.  *Lyons*, 417 F.3d at 573.  "And it has long been true that this inquiry turns on whether the 'facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (citing *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). "Courts look at this question through the lens 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (citing *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (internal citations omitted).

Thus, the Court's decision on whether a Fourth Amendment violation occurred turns on the Court's assessment of Defendant's belief that he acted lawfully.  Defendant contends that he believed he had probable cause to arrest Plaintiff based upon Plaintiff's obstruction of his questioning of Klein.   Plaintiff contends that Defendant is arguing for the first time that he believed Plaintiff violated a different ordinance than the one with which Plaintiff was initially charged.  However, in *Marrs v. Tuckey*, the Eastern District stated in a footnote that the focus of the inquiry into the propriety of applying qualified immunity is an assessment of the facts known to the officers at the time of the arrest:

9

Plaintiff, of course, was neither arrested nor charged under this statute. Yet, as
the Supreme Court recently affirmed, the probable cause inquiry in this
case is governed by a purely objective standard, and depends solely "upon the
reasonable conclusion to be drawn from the facts known to the arresting officer
at the time of the arrest." *Devenpeck v. Alford*, 125 S. Ct. 588, 593 (2004). Thus,
"an arresting officer's state of mind (except for the facts that he knows) is
irrelevant to the existence of probable cause," and the officer's "subjective reason
for making the arrest need not be the criminal offense as to which the known facts
provide probable cause." 125 S. Ct. at 593-94. Rather, "those are lawfully arrested
whom the facts known to the arresting officers give probable cause to arrest." 125
S. Ct. at 594. Consequently, it is enough here that Defendants can identify *any* law
that would have authorized Plaintiff's arrest under the facts known to the Defendant
troopers at the time.

362 F. Supp. 2d 927, 943 n.17 (E.D. Mich. 2005) (emphasis in original).  Thus, Defendant's

contention that he reasonably believed that he could arrest Plaintiff for interfering with his

investigation is a viable argument regardless of what statute Defendant later claims Plaintiff

violated.  The question is whether Defendant believed that he could have properly arrested

Plaintiff at all.

Plaintiff relies heavily on the Michigan Supreme Court's holding in *People v. Vasquez*,

465 Mich. 83 (2001).  In the instant state court criminal case against Plaintiff, the state district

judge, relying exclusively on *Vasquez*, noted that the Columbia Township ordinance forbidding

obstruction of the duties of an officer strongly resembled the ordinance in *Vasquez*, in which the

Michigan Supreme Court held that the interference with the officer had to be physical.  (Pl.'s

Resp. Ex. D at 4).  In finding Plaintiff not guilty on all charges, the judge held that Plaintiff's

utterance of words to prevent Klein from answering Defendant did not in any way constitute

threats of physical interference with the officer.  (*Id.* at 5).

Despite the state district judge's ruling that Plaintiff's conduct was not sufficient to find

that he violated the ordinance, this Court disagrees with Plaintiff's argument that the holding in

10

*Vasquez* ends the Court's inquiry into whether Defendant reasonably believed that he had probable cause to arrest Defendant. The *Vasquez* case is significantly different from the present case in two respects.

In *Vasquez* the issue before the Michigan Supreme Court was whether lying to a police officer about one's name and age constituted an "obstruction" under the Michigan statute, which stated that "[a]ny person who shall knowingly and willfully . . . obstruct, resist, oppose, assault, beat or wound . . ." an officer of the law in the carrying out of his or her official duties would be guilty of a misdemeanor. *Vasquez*, 465 Mich. at 87. The plurality opinion of Justice Markman held that the statute, Mich. Comp. Laws Section 750.479, required some physical interference with the law enforcement officer. This opinion noted a similar Iowa statute which required active interference.

In the instant case, Plaintiff engaged in active interference. Justice Markman's plurality opinion further noted that protecting police officers from harm was not the only purpose of the statute: "one may physically 'obstruct' an officer without necessarily posing a threat to the officer's safety." *Id.* at 94. The Court finds that this is what occurred here. The Columbia Township ordinance recognizes unlawful conduct where "[a] person [] obstructs, resists, impedes, hinders or opposes a peace officer in the discharge of his or her official duties." Columbia Township Ordinance, Section 28.3.3 (Disorderly Person).

Plaintiff's conduct in persisting to interfere with Officer Ambs' investigation amounted to a physical interruption of the questioning, which the Sixth Circuit has indicated would not be protected by the Constitution. In *Greene v. Barber*, 310 F.3d 889, 895 (6th Cir. 2002), the Sixth Circuit Court of Appeals per Judge David Nelson, explained:

> It is clear that the Constitution gave Mr. Greene no license to interrupt the transaction of public business by loud animadversions on Lt. Barber's personality and mental capacity, or any other subject, for that matter – *consider, for example the likely consequence of someone's interrupting an oral argument in a Sixth Circuit courtroom with a diatribe like Mr. Greene's* . . . .

(emphasis added).

In the instant case, Officer Ambs' arrest of Plaintiff was based upon his interference with his investigation of this drug offense, and not because Plaintiff was insulting Ambs or lying in response to questioning. Plaintiff, unlike in *Vasquez*, was engaged in active conduct which impeded Officer Ambs' ability to question Klein. The state district judge believed that Defendant was attempting to locate the owner of the vehicle when he approached the Klein home. (Pl.'s Resp. Ex. D at 1). Plaintiff interrupted Officer Ambs three times, (*Id.* at 2; Pl.'s Resp. Exs. E and F), despite Defendant's request that Plaintiff cease speaking over him while Defendant attempted to question Klein.[4] (*Id.*; Def.'s Dep. 27-28). Thus, unlike in *Vasquez*, Plaintiff was obstructing Defendant's investigation of another individual, not himself, thereby creating a clear obstruction of Officer Ambs' criminal investigation, which had already uncovered contraband.

Plaintiff did not have a First Amendment right to obstruct Defendant in the course of his investigation to find the owner of the marijuana found in the car outside the Klein home. Plaintiff persisted in speaking over Defendant, preventing him from conducting his investigation,

---

[4]Ambs Deposition, <u>page 27</u>, <u>Ans</u>.-It's not the things they were saying. It's what they were or when they were saying it. As I was trying to speak to Mr. Klein, they would speak over me and tell Mr. Klein not to talk to me, not to come in or not to speak to me and come back in the house.
<u>Page 28</u>, <u>Ques</u>.-Why did you pursue Mr. King at this point?
<u>Ans</u>.-Because after numerous repeated comments to be quiet and stop interfering with my investigation, he continued to talk over me in attempts to keep me from talking to Mr. Klein.

12

even after Officer Ambs warned him.  This is not a case of Plaintiff merely yelling insults at or in the presence of an officer, or questioning the reason for his arrest, as in other cases cited by Plaintiff in which the United States Supreme Court found such speech to be protected.[5]

Because the Court is charged with considering whether Defendant is entitled to qualified immunity, all that is required is a showing that Defendant had a reasonable belief that he had probable cause to arrest Plaintiff, even if he was mistaken in his belief.  In the instant case, Plaintiff's continuing obstructive conduct established probable cause to arrest him.

Defendant's testimony was that Klein, the occupant of the residence, came out of the house into the vestibule to speak with Defendant.  (Def.'s Dep. 25-26).  Defendant states that he started to ask Klein about the vehicle when Plaintiff and Anderson advised Klein not to answer any questions or let Defendant come into the house.  (*Id.* at 26).  At this point, Defendant stated to Plaintiff and Anderson that if they did not discontinue their actions, they would be going to jail.  (*Id.*).  Defendant testified that he attempted to question Klein once again, and Plaintiff persisted in telling Klein to come back into the house and that he did not have to talk to Defendant.  (*Id.* at 27).  Defendant states that he looked directly at Plaintiff and told him specifically that if he "said one more word [] he would be arrested."  (*Id.*).  When Plaintiff again instructed Klein not to speak to Defendant, Defendant then attempted to place Plaintiff under arrest.  (*Id.* at 28).

Plaintiff's own testimony also supports the reasonableness of Defendant's actions. Plaintiff indicated in his deposition that Klein made a motion to go step outside and talk to Defendant despite Plaintiff's repeated statements that Klein did not have to speak with

---

[5] I.e., *Houston v. Hill*, 482 U.S. 451 (1987); *McCurdy v. Montgomery*, 240 F.3d 512 (6th Cir. 2000); *Sandul v. Larion*, 119 F.3d 1250 (6th Cir. 1997).

Defendant. (Pl.'s Dep. 48-50). Plaintiff admits that he told Klein not to speak to Defendant at least three times, and that Defendant warned him that if he said one more word, Plaintiff would be arrested. (*Id.* at 50). The only real difference between Plaintiff's and Defendant's testimony is Plaintiff's contention that he never spoke over Defendant, which is also corroborated by Klein's affidavit. (*See* Pl.'s Resp. Exs. E and F). Even if the Court were to conclude that Plaintiff did not talk over Defendant, the Court would still find, nonetheless, that Defendant was reasonable in his belief that he had probable cause to arrest Plaintiff for interfering with his questioning of Klein.[6]

As noted above, Defendant warned Plaintiff several times that he would be arrested if he continued to interject himself into Defendant Ambs' attempt to question Klein.

Furthermore, even if Defendant did violate Plaintiff's Fourth Amendment rights, Defendant might still be immune from suit in light of the second prong of the qualified immunity test. Under the second part of the qualified immunity test, the Court must consider, even if there was a constitutional violation, whether the violation was recognized as clearly established law. Here, the state trial court relied upon *Vasquez* exclusively to establish that Plaintiff could not be convicted under the Columbia Township statute. Even if Plaintiff's Fourth Amendment rights were violated, the Court finds, based on the above discussion, that *Vasquez* did not clearly establish Plaintiff's right to not be arrested "in light of the specific context of the case."[7] Thus,

---

[6] The Court notes the state district judge's finding that Defendant did not have probable cause is not controlling in this Court. Defendant would still be entitled to qualified immunity if he reasonably believed he had probable cause. *See Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005) ("In ascertaining whether a constitutional violation occurred, the only question is whether [the officer] had probable cause--not whether the evidence would be sufficient to support a conviction." (citing *Adams v. Williams*, 407 U.S. 143, 149 (1972)).

[7] *Lyons v. City of Xenia*, 417 F.3d 565, 571 (6th Cir. 2005).

14

summary judgment is also proper on the basis that the law was unclear at the time of Plaintiff's arrest.

### A.       First Amendment Violation

Plaintiff contends that his First Amendment rights were violated because he was engaged in constitutionally protected speech when he informed his friend of his right not to speak with an officer.  Defendant argues that even if Plaintiff's speech was protected, the content of Plaintiff's speech was irrelevant, and that Plaintiff could have yelled nonsense at the top of his lungs and still would have been arrested.  Defendant avers that he is entitled to qualified immunity on Plaintiff's First Amendment claim.

As stated above, to determine whether Defendant is entitled to qualified immunity, the Court must consider whether Plaintiff suffered a violation of his constitutional right; and if so, "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Lyons*, 417 F.3d at 571.  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The United States Supreme Court has suggested that under a properly tailored statute (i.e., a statute that is not overbroad in its punishment of protected speech), one who "run[s] beside [an officer pursuing a felon] in a public street shouting at the officer" may properly be punished for such conduct without running afoul of the First Amendment.  *Houston v. Hill*, 482 U.S. 451, 463 n. 11 (1987).  The Court noted that in that circumstance, "what is of concern in that example is not simply contentious speech, but rather the possibility that by shouting and

15

running beside the officer the person may physically obstruct the officer's investigation."  *Id.*

The Sixth Circuit has recently dealt with First Amendment rights in an arresting situation. In *Schliewe v. Toro*, 138 Fed. Appx. 715, 723 (6th Cir. 2005) (unpublished), the court of appeals denied a plaintiff's request to amend his complaint to add a First Amendment claim, stating that:

> It is true that a police officer who arrests an individual in retaliation for insulting him or using profanity may violate that individual's First Amendment rights if the officer would not have made the arrest in the absence of a retaliatory motive. *See Greene v. Barber*, 310 F.3d 889, 896 (6th Cir. 2002). However, in this case it is abundantly clear that Mr. Schliewe was arrested for bleeding on those around him and threatening Officer Toro, regardless of the fact that he used profanity.

Thus, the court of appeals found that the interference with the officer's official duties was the true basis for the plaintiff's arrest.  Because the content of the plaintiff's speech was irrelevant, the court held that the plaintiff did not have a viable claim for a First Amendment violation.

In another decision by the Sixth Circuit, the Court of Appeals found no First Amendment violation where the plaintiff was arrested after telling a police officer "no" when the officer asked the plaintiff if he could enter a secured gate to pursue a car that had just entered the gate. *Johnson v. Estate of Laccheo,* 935 F.2d 109, 112 (6th Cir. 1991). The plaintiff, a security guard employed on the premises, maintained that he should not have been arrested for saying "no" to the officer. In holding that the plaintiff's constitutional rights were not violated, the court of appeals noted:

> Although free speech is a clearly established right, [Plaintiff] was not arrested for his speech. By saying "no" to [the officer] when asked to enter the complex, [Plaintiff] merely communicated to [the officer] his decision to forbid [the officer] permission to enter [his employer's] premises in order to pursue the traffic violator. [Plaintiff] admits that he: 1) refused [the officer] permission to pass through the gate; 2) had control over the mechanical gate itself; and 3) had the physical means to prevent entry. We conclude that [Plaintiff] was not arrested for his speech but, rather, the act of preventing [the officer] from pursuing the traffic violator. Thus, there is no clearly established right which has been violated.

16

*Id.*  In the instant case, the continuing obstructive speech prevented Defendant Ambs from conducting the clearly warranted investigation.  The content of the speech in this context, is irrelevant.  It is the continuing interruption of the investigation that merits the Court's focus. The Constitution does not provide a "license to interrupt" official business of officers or public officials through verbal conduct.[8]

Finally, the Eastern District of Michigan has also considered the issue of First Amendment protections during an arrest.  *Lawrence v. Bloomfield Township*, Case No. 00-74302, 2005 U.S. Dist. LEXIS 23897 (E. D. Mich. Oct. 17, 2005) (unpublished).  In holding that the plaintiff did not have a viable claim under the First Amendment, Judge Cohn noted that the plaintiff's arrest did not stem from his words alone:

> Lawrence was not arrested merely for his utterances; rather, he was arrested because he prevented and interfered with the officers from continuing their investigation by not allowing them to secure the premises. Accordingly, the officers did not violate Lawrence's First Amendment rights and they are entitled to qualified immunity.

Therefore, the law within this circuit is clear that if a person verbally interferes with an officer in the carrying out of his official duties, and the court finds that the fact of the interference rather than the words themselves constituted the basis for the arrest for that interference, then no First Amendment violation has occurred and the defendant would be entitled to qualified immunity.  Here, the Court finds that Defendant did not violate Plaintiff's First Amendment rights because, as discussed *supra*, Plaintiff continued to interfere with his questioning of Plaintiff, even after being warned that such conduct would result in his arrest. This is not about a one time interference by speech, but about continuing obstruction of a proper

---

[8] *See Greene, supra* note 1.

17

investigation.

Even if the Court found that Plaintiff suffered a First Amendment violation, if the Court finds that Defendant arrested Plaintiff because Defendant reasonably believed that he interfered with Defendant's investigation, then Defendant would still be entitled to qualified immunity. *See Johnson*, 935 F.2d at 112 (finding district court erred in not analyzing whether defendant officer reasonably believed it was lawful to arrest the plaintiff, even if the defendant violated the plaintiff's rights under the First Amendment).

The Court finds that Defendant reasonably believed that he had a right to arrest Plaintiff regardless of the content of his statements.  As the state court district judge noted:

> As the officer was attempting to get information as to the ownership and the whereabouts of the [car and marijuana's] owner, [Plaintiff] repeatedly said, 'Nick come into the house and don't answer his questions.' After about 45 to 60 seconds and being warned several times, the officer told [Plaintiff]: 'if he said one more word he would be arrested.' [Plaintiff] continued, and . . . [the officer] attempted to put him under arrest."

(Pl.'s Resp. Ex. D. at 2).  Plaintiff was then charged with disorderly conduct as "[a] person who obstructs, resists, impedes, hinders or opposes a peace officer in the discharge of his or her official duties."  (Pl.'s Resp. Ex. D. at 4).  The Supreme Court's ruling in *Houston v. Hill*, 482 U.S. 462 at 466-67 (1987), noted that verbal interference with an officer's duties may constitute unprotected speech under the First Amendment.  The statute at issue in *Houston* stated that "[i]t shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest."  Justice Brennan's majority opinion noted:

> For example, Justice Powell states that "a municipality constitutionally may punish an individual who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic

18

at a busy intersection." *Post*, at 479. We agree, however, that such conduct might constitutionally be punished under a properly tailored statute, such as a disorderly conduct statute that makes it unlawful to fail to disperse in response to a valid police order or to create a traffic hazard. *E. g., Colten v. Kentucky*, 407 U.S. 104 (1972).

. . . .

Justice Powell also observes that "contentious and abusive" speech can interrupt an officer's investigation, and offers as an example a person who "run[s] beside [an officer pursuing a felon] in a public street shouting at the officer." *Post*, at 479. But what is of concern in that example is not simply contentious speech, but rather the possibility that by shouting and running beside the officer the person may physically obstruct the officer's investigation. Although that person might constitutionally be punished under a tailored statute that prohibited individuals from physically obstructing an officer's investigation, he or she may not be punished under a broad statute aimed at speech.

Thus, the *Houston* opinion allows an officer to make an arrest for a verbal interruption that acts to physically obstruct a lawful investigation, without physically touching the officer.

Based on the above case law and the facts presented in the instant case, the Court finds that a reasonable officer in Defendant's position could have reasonably believed that Plaintiff's arrest was lawful.  *See Johnson*, 935 F.2d at 112.

## IV.    CONCLUSION

For the reasons stated above, the Court finds that Officer Ambs is entitled to qualified immunity and GRANTS Defendant Kevin Ambs' Motion for Summary Judgment.[9]

_____

[9]At oral argument, Plaintiff raised two additional arguments that don't "track." First, Plaintiff contended that two filings, attached to his response, Exs. D & E, one signed by Plaintiff and one by Nicholas Klein, placed facts before the Court that prevent summary judgement against Plaintiff. Exhibit D was a Post-Deposition Declaration of Sean King; Exhibit E was a Declaration of Nicholas Klein. Neither of the written filings meets the standards for a sworn affidavit. First, neither filing bears the name of a notary public. Merely swearing to a document by the author does not make it admissible as a sworn declaration. Second, neither document is admissible as an affidavit under this Court's Electronic Filing Policies and Procedures, January 31, 2006. Rule 9(d). Both documents are signed by this person with the ⌊S⌋.

**S/Paul D. Borman**
**PAUL D. BORMAN**
**UNITED STATES DISTRICT JUDGE**

**Dated:  March 28, 2006**

## CERTIFICATE OF SERVICE

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 28, 2006.**

**S/Jonie Parker**
**Case Manager**

---

Rule 9 (d) states:
> An affidavit declaration or paper containing the signature of an non-attorney shall be signed and filed electronically.

Neither document complied with the Court's filing requirements. Further, neither document contained the name of a notary public, much less the signature of a notary public. Since neither document was proper, neither can be taken into account by the Court in ruling on Defendant's Motion for Summary Judgement.